945 So.2d 40 (2006)
Tamara LIRETTE and Arnold Lirette
v.
The CITY OF BATON ROUGE and the Parish of East Baton Rouge Employees Retirement System.
No. 2005 CA 1929.
Court of Appeal of Louisiana, First Circuit.
October 6, 2006.
William H. Cooper, Jr., Baton Rouge, for Plaintiffs-Appellees Tamara Lirette and Arnold Lirette.
Randy P. Zinna, Baton Rouge, for Defendant-Appellant Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge.
*42 Before: PETTIGREW, DOWNING, and HUGHES, JJ.
DOWNING, J.
In this case, defendant appeals the district court's judgment modifying the date of plaintiff's disability to make her ordinary disability retirement benefits retroactive to December 12, 1997. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
At all times pertinent hereto, Tamara Lirette was employed as an Emergency Medical Services technician for the City of Baton Rouge and Parish of East Baton Rouge ("City-Parish"). On March 25, 1997, Mrs. Lirette was dispatched to a benzene spill in Baton Rouge. Mrs. Lirette claims that as a result of exposure to benzene vapors, she immediately became ill. Within days, she was hospitalized. Thereafter, on December 12, 1997, she filed an application for service-connected disability retirement benefits with the Employees' Retirement System for the City-Parish ("Retirement System"). The Board of Trustees of the Retirement System ("Board") held a hearing on July 21, 1998, at which time the Board's physician indicated that he had examined Mrs. Lirette and found that she was not disabled as a result of the benzene exposure. Mrs. Lirette's application for service-connected disability retirement benefits was subsequently denied.
On August 4, 1998, Mrs. Lirette filed a petition seeking judicial review of the Board's decision in accordance with La. R.S. 49:964.[1] Mrs. Lirette took no further action regarding this petition for almost three years while she focused her attention on a tort suit related to the benzene exposure. In May 2001, Mrs. Lirette and the Retirement System filed a joint motion in the district court to remand the matter to the Board so that Mrs. Lirette could apply for ordinary disability retirement benefits rather than pursuing judicial review of the Board's denial of Mrs. Lirette's request for service-connected disability retirement benefits.
Following a remand, the Board conducted a hearing on August 30, 2001, at which time Mrs. Lirette's application for ordinary disability retirement benefits was approved. The Board made its award retroactive to November 21, 2000, the first date on which the Board received any indication that Mrs. Lirette intended to request ordinary disability retirement benefits instead of service-connected disability retirement benefits. Thereafter, Mrs. Lirette sought judicial review of the Board's decision, arguing that her retirement benefits should be made retroactive to December 12, 1997, the date on which she originally requested service-connected disability retirement benefits. In a judgment dated October 8, 2002, the district court modified the Board's decision, making Mrs. Lirette's ordinary retirement benefits retroactive to December 12, 1997.
The Retirement System appealed the district court's October 8, 2002 judgment to this court, alleging that it was error for the district court to award Mrs. Lirette ordinary disability retirement benefits retroactive to December 12, 1997, when Mrs. Lirette's amended application for ordinary disability retirement benefits was not filed at that time. In an unpublished opinion, this court found the record did not support the district court's modification of the Board's decision, but concluded that additional *43 evidence was necessary with regard to the actual date of Mrs. Lirette's disability. Thus, we reversed the district court's judgment and remanded the matter for the sole purpose of taking additional evidence on the issue of the date of Mrs. Lirette's disability. See Lirette v. City of Baton Rouge, 02-2502 (La.App. 1 Cir. 9/26/03), 855 So.2d 434 (unpublished).
In accordance with this court's instructions, the matter was remanded to the Board, and a hearing was held on September 23, 2004, at which time the Board heard testimony from Mrs. Lirette and Dr. D.J. Scimeca, the Board's medical consultant. In addition, the depositions of Mrs. Lirette's treating physicians, Dr. Stephanie Cave and Dr. Deborah Abernathy, and a listing of Mrs. Lirette's hospitalizations from April 1997 through May 2001 were introduced into the record for the Board's consideration. The Board took the matter under advisement and, on October 28, 2004, rendered its opinion finding that Mrs. Lirette was entitled to ordinary disability retirement benefits retroactive to November 21, 2000.
Mrs. Lirette subsequently appealed the Board's decision to the district court, and the matter proceeded to a hearing on July 13, 2005. After considering the administrative record and assessing the testimony of the doctors, the district court concluded that Mrs. Lirette's disability occurred as a result of her illness during April 1997 and that the evidence in the record supported a disability claim retroactive to December 12, 1997, the date of her original application for service-connected disability retirement benefits. The court signed a judgment in accordance with its findings on July 21, 2005.
It is from this judgment that the Retirement System has appealed, assigning the following specifications of errors:
(1) The trial court erred in granting Plaintiff ordinary disability retirement benefits for a time period prior to Plaintiff making an amended application for such benefits with the Defendant.
(2) The trial court erred in finding that Plaintiff was disabled as of December 12, 1997, as Defendant found Plaintiff did not prove by a preponderance of evidence any date of disability prior to November 21, 2000, and the administrative decision was not arbitrary, capricious, or an abuse of discretion.

STANDARD OF REVIEW
Judicial review is a multifaceted function involving several types of reviews: statutory or constitutional review, procedural review, substantive review, factual review, and fact-finding. St. Martinville, L.L.C. v. Louisiana Tax Com'n, 05-0457, p. 3 (La. App. 1 Cir. 6/10/05), 917 So.2d 38, 41. Pursuant to La. R.S. 49:964(G), the district court may reverse or modify the decision of the administrative agency on judicial review only if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon *44 judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
The Louisiana legislature enacted Acts 1997, No. 128, § 1, effective June 12, 1997, to amend paragraph G(6) of the Louisiana Administrative Procedure Act, La. R.S. 49:964, to empower the trial court to be a fact finder that weighs the evidence and makes its own conclusions of fact by preponderance of the evidence. Accordingly, we must defer to a trial court's factual determinations and use a manifest error standard of review. St. Martinville, 05-0457, at p. 4, 917 So.2d at 41-42.

DISCUSSION
In assignment of error number one, the Retirement System argues that Mrs. Lirette's position that she is entitled to ordinary disability retirement benefits retroactive to December 12, 1997, is unfounded as the application made at that time was for service-connected disability retirement benefits. Mrs. Lirette alleges that she was told by a representative of the Retirement System in 1997 that she should apply for service-connected disability retirement benefits. According to Mrs. Lirette, she was advised that if her request for service-connected disability retirement benefits was denied, she could then apply for ordinary disability retirement benefits, which, if granted, would be retroactive to the date she filed for the service-connected disability retirement benefits. The Retirement System acknowledges that it generally makes disability benefits retroactive for the period of time it takes to process an application for disability benefits and did so in Mrs. Lirette's case by making her award retroactive to November 21, 2000, the first date on which Retirement System was made aware that Mrs. Lirette had decided to seek ordinary disability retirement benefits.
Eligible members of the Retirement System are entitled to disability retirement benefits upon application by the member and certification of disability by the Board's physician. Section 1:265(D)(3) of the Code of Ordinances of the City-Parish provides, in pertinent part, as follows with regard to the application for such benefits:
Application for disability retirements shall be submitted by contributing members, along with a report from the member's physician certifying that the member's disability totally incapacitates the member from further performance of his normal duties. . . . Provided that the board's physician or physicians shall certify that the member is mentally or physically totally incapacitated from the further performance of his normal duties, that such incapacity is likely to be permanent, and that the member should be placed on disability retirement, the board shall approve the member's application for a disability retirement allowance.
Thus, once a member makes the application for disability retirement benefits and said disability is certified by the Board's physician, the member's application must be approved by the Board. This application process is the same for both service-connected disability and ordinary disability. Once the application for disability retirement benefits is made, the disability claim is pending, and, in the case of ordinary disability retirement, benefits are payable beginning on the date of disability as determined by the Board's physician.
*45 In the instant case, there is no dispute that Mrs. Lirette filed an application for service-connected disability retirement benefits on December 12, 1997, which application was denied on July 21, 1998. Mrs. Lirette subsequently sought judicial review of the Board's decision on the service-connected disability application. Thereafter, in May 2001, Mrs. Lirette and the Retirement System joined in a motion to remand the matter to the Board so that Mrs. Lirette could be considered for ordinary disability retirement. By joining in said motion, the Retirement System effectively acknowledged what we believe to be true in this case; i.e., that based on the unique facts and circumstances herein, Mrs. Lirette's disability claim was still valid and pending when the parties chose to return to the Board for its consideration of Mrs. Lirette's eligibility for ordinary disability retirement benefits. Thus, we find no merit to the Retirement System's argument on this issue.
In its second assignment of error, the Retirement System contends the evidence does not support a finding that Mrs. Lirette was disabled as of December 12, 1997, arguing instead that November 21, 2000 was an appropriate date for commencement of ordinary disability retirement benefits under the facts of this case.
When this matter was remanded to the Board in September 2004, additional evidence was received on the issue of the date of Mrs. Lirette's disability. At the hearing on this issue, the Board's physician, Dr. Scimeca, testified that he first examined Mrs. Lirette in July 1998 with regard to her application for service-connected disability retirement benefits. Dr. Scimeca opined at that time that Mrs. Lirette was in remission and was able to return to work. In August 2001, Dr. Scimeca examined Mrs. Lirette for the purpose of determining if she was eligible for ordinary disability retirement benefits. Dr. Scimeca noted a change in Mrs. Lirette's condition from the time he had first examined her. Following his exam of Mrs. Lirette, Dr. Scimeca determined that she was "physically totally incapacitated for the further performance of her duties as an EMS supervisor" and that she should be granted an ordinary disability retirement. But he never provided a date for her disability, which was the mandated purpose of the hearing.
In addition to the testimony of Dr. Scimeca, however, the Board considered the depositions of Mrs. Lirette's treating physicians. Her regular treating physician, Dr. Cave, provided clear testimony by deposition that she told Mrs. Lirette at the time of her hospitalization (April 1997) that she could not work as an EMS tech.
Dr. Cave testified that the causes of her condition were more than the benzene that had been the source of her claim for service-related disability. She explained the reasons for and causes of Mrs. Lirette's continuing problems, including problems with exhaustion and fatigue. She testified that Mrs. Lirette's condition continued through December 1999, the last time she saw Mrs. Lirette, due to changes in insurance. She testified plainly, "I think from the time she was discharged until the time I stopped seeing her in '99, I didn't feel like she could be employed" due to her fatigue, falling down, not being able to get up once she fell, arthritis, vasculitis, nephritis, thyroiditis, and hemolytic anemia. She further testified, "I don't think she would be a good risk in any work environment." She testified that Mrs. Lirette "never really improved."
Dr. Abernathy, who was brought into the case by Dr. Cave as a hematologist in April 1997, also testified by deposition. While she testified that Mrs. Lirette was "doing fairly well" in September 1998, she *46 stated that she did not know if Mrs. Lirette would have been cleared for work at that point. She reiterated that she did not know whether Mrs. Lirette was able to work at that time.
Based on the recommendation from Dr. Scimeca and the testimony of Mrs. Lirette's treating physicians, the Board made the following findings in its October 28, 2004 opinion:
This matter was remanded to the [Board] so that additional evidence could be taken with reference to the disability of [Mrs.] Lirette.
The record reflects that [Mrs.] Lirette filed an application for service-connected disability retirement benefits on December 12, 1997. The Board held a hearing on this application on July 21, 1998, at which time the application for service-connected disability retirement benefits was denied based upon the Board physician's advice that [Mrs.] Lirette was not disabled as a result of a job-related accident. [Mrs.] Lirette was offered the opportunity at that time to convert her service-connected disability application to an ordinary disability application which would not require the proof of an on-the-job injury. Rather than proceed with an ordinary disability retirement application and the associated disability determinations which are required under such an application, [Mrs.] Lirette chose to seek judicial review of the Board's decision on the service-connected disability application by filing a Petition For Appeal on August 4, 1998.
The record reflects that the Board did not receive any communication from [Mrs.] Lirette until such time as her counsel advised the Board's general counsel that [Mrs.] Lirette desired to be considered for an ordinary disability by correspondence dated November 21, 2000. After an examination by the Board physician subsequent to November 21, 2000, the Board granted [Mrs.] Lirette an ordinary disability retirement and paid her retroactive to November 21, 2000.
The Board finds that [Mrs.] Lirette's demand to be paid disability benefits retroactive to December 12, 1997 is not allowed under the Retirement Ordinances requiring that the disability be determined as of the date of application. As the Court of Appeal held in its decision, the retroactive payments commonly made by the Retirement System are meant to provide only for the period of time necessary to process an application for benefits. The length of time that passed in [Mrs.] Lirette's case was not due to this administrative process but rather to [Mrs.] Lirette choosing to pursue her tort suit rather than an application for ordinary disability retirement immediately upon the denial of her service-connected disability retirement application. By failing to apply for the ordinary disability retirement benefit immediately and by failing to have the associated disability determinations performed at that time, [Mrs.] Lirette has caused the delay in the payment of benefits which the Board finds to be exclusively as a result of her decision and at her fault. The Board's physician was of the opinion that it is not possible to determine the exact date upon which [Mrs.] Lirette may have been disabled between December 12, 1997 and November 21, 2000. [Mrs.] Lirette's own physician, Dr. Abernathy, was of the opinion that [Mrs.] Lirette was doing fine into the year 2000, and was unable to offer an opinion on whether or not she was able to work at that time or as to whether or not she was disabled.
The Board finds that the delay from the time of the Board's denial of [Mrs.] *47 Lirette's service-connected disability application on July 21, 1998 until November 21, 2000, the first date on which the Retirement System was aware that [Mrs.] Lirette desired to apply for an ordinary disability retirement, has resulted in [Mrs.] Lirette's inability to provide any proof to the Board as to the date on which she first became disabled. The Board also finds that this delay from July 21, 1998 to November 21, 2000 did not occur as a result of the Board's administrative process for approving disability applications, but rather from conduct exclusively within the control of [Mrs.] Lirette.
Accordingly, the Board is of the opinion that the payments made to [Mrs.] Lirette from November 21, 2000 to the present satisfy in full the Retirement System's liability under the Retirement Ordinances in reference to her application for ordinary disability benefits.
After considering the same evidence that the Board had before it, however, the district court found that the evidence supported a disability claim for Mrs. Lirette retroactive to December 12, 1997. In oral reasons for judgment issued on July 13, 2005, the district court stated that Mrs. Lirette was disabled on December 12, 1997. In its judgment, the district court further found that she was disabled as a result of her illness during April 1997, that she was disabled as of December 12, 1997, and that her disability continued through the date of judgment.
The district court's finding that Mrs. Lirette was disabled in December 1997, at the time she applied for disability benefits, is supported by the record and is not manifestly erroneous. Under the manifest error rule, if the fact finder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990). Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, through DOTD, 617 So.2d 880, 883 (La. 1993).
We acknowledge a lack of evidentiary support for the trial court's finding that Mrs. Lirette's disability "occurred as a result of her illness during April of 1987." However, the trial court's finding that Mrs. Lirette was "disabled as of December 12, 1997 . . . and her disability continues through the current date" is fully supported by the record.
December 12, 1997 was the date of Mrs. Lirette's initial application for disability benefits. It appears from the record that this is the first date from which disability benefits could be awarded; and, as discussed above, this application was still valid and pending when the Retirement Board considered Mrs. Lirette's claim for ordinary disability.
This court's prior opinion in this matter held that "the district court erred in modifying the Retirement Board's decision and making the payments retroactive to 1997" because "there is no evidence upon which the district court can base a conclusion that Lirette was disabled in 1997." Lirette v. City of Baton Rouge, 02-2502, p. 6 (La.App. 1 Cir. 9/26/03), 855 So.2d 434 (unpublished). On remand, the Board received evidence, including competent evidence from Dr. Cave that, from whatever cause, Mrs. Lirette was disabled at the time of her hospitalization in April 1997, remained disabled at the time of Mrs. Lirette's application for benefits in December 1997, and continued to be disabled due to her medical conditions.
*48 On judicial review, in its role as fact finder, the trial court was not manifestly erroneous in crediting this testimony over that of the other doctors. Giving the trial court its due deference under the manifest error rule, we accept its factual findings. Accordingly, we affirm the judgment of the trial court.

DECREE
For the above and foregoing reasons, we affirm the district court's July 21, 2005 judgment. Appeal costs in the amount of $695.17 are assessed against the Employees' Retirement System for the City of Baton Rouge, Parish of East Baton Rouge.
AFFIRMED.
PETTIGREW, J., dissents and assigns reasons.
PETTIGREW, J., dissenting.
I must respectfully dissent from the majority. In my humble opinion there is nothing in the record to support the district court's finding that Mrs. Lirette was disabled as of December 12, 1997. Rather, the consensus among the medical providers in this case is that Mrs. Lirette was disabled as of her hospitalization for vasculitis, which according to the record was on February 26, 2000. I would reverse the district court's July 21, 2005 judgment and award Tamara Lirette ordinary disability retirement benefits from the Employees' Retirement System for the City of Baton Rouge and the Parish of East Baton Rouge effective February 26, 2000.
NOTES
[1] Pursuant to La. R.S. 49:964, entitled "Judicial review of adjudication," a person aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review in the district court of the parish in which the agency is located.