M. RANDALL SEAL, IN HIS CAPACITY AS ASSESSOR FOR WASHINGTON PARISH
v.
FLORIDA GAS TRANSMISSION COMPANY
No. 2009 CA 0808.
Court of Appeals of Louisiana, First Circuit.
August 14, 2009.
Not Designated for Publication
BRIAN A. EDDINGTON, Baton Rouge, LA, Counsel for Plaintiff/Appellee M. Randall Seal, In His Capacity as Assessor for Washington Parish, and Intervenor/Appellee Brian Wilson, In His Capacity as Assessor for East Baton Rouge Parish.
CHRISTOPHER J. DICHARRY, LINDA S. AKCHIN, JASON R. BROWN, Baton Rouge, LA, Counsel for Defendant/Appellant Florida Gas Transmission Company.
VANESSA CARLTON LAFLEUR, Baton Rouge, LA, Counsel for the Louisiana Tax Commission.
Before: GUIDRY, GAIDRY, and HUGHES, JJ.
HUGHES, J.
At issue herein is whether a taxpayer pipeline company was entitled to a reduction in the fair market value of its gas compressor units located in East Baton Rouge and Washington Parishes due to obsolescence and whether the local assessors utilized the appropriate Louisiana Tax Commission form to determine the units' fair market value. Moreover, the pipeline company has also raised the question of whether the East Baton Rouge Parish Assessor should have been allowed to intervene in the Washington Parish Assessor's appeal to the Twenty-Second Judicial District Court, and argues that the district court was a court of improper venue and did not have subject matter jurisdiction to consider the intervention. For the following reasons, we reverse the district court judgment overruling the exception objecting to venue and render judgment sustaining that exception and ordering that the intervention be transferred to the Nineteenth Judicial District Court for the Parish of East Baton Rouge. Moreover, we affirm the district court's ruling with respect to the assessment of the property located in Washington Parish.

FACTUAL AND PROCEDURAL BACKGROUND
In ANR Pipeline Co. v. Louisiana Tax Comm'n[1] and Transcontinental Gas Pipe Line Corp. v. Louisiana Tax Comm'n,[2] this court determined that the Louisiana Tax Commission (the Commission) had discriminated against interstate natural gas pipelines insofar as they were centrally assessed by the Commission at twenty-five percent of fair market value while certain intrastate counterparts, which should have been centrally assessed as public service properties by the Commission at twenty-five percent of fair market value, were assessed locally at fifteen percent of fair market value. As a result, Florida Gas Transmission Company (FGT), which was a plaintiff in the Transcontinental suit, obtained judgments for the 2000 through 2004 taxable years that ordered it, along with certain other interstate natural gas pipeline companies, to be assessed at a rate of fifteen percent of fair market value. To achieve uniformity and equality in assessment, this court also ordered that the interstate pipeline companies be "reassessed" by the local parish assessors.
In response to the rulings, the Commission ordered the various local assessors to reassess FGT's property utilizing valuation methodology applicable to non-public service properties and to determine the assessed value at fifteen percent of fair market value. FGT was able to reach agreements with the local assessors as to the value of all its property subject to the reassessment, with the exception of the value of its gas compressor units located in the towns of Franklinton in Washington Parish and Zachary in East Baton Rouge Parish.
With regard to the compressors at issue, on November 27, 2006, FGT submitted returns for the tax years 2000 through 2004 to the Assessors for Washington and East Baton Rouge Parishes (hereinafter sometimes collectively referred to as "Assessors"), reporting the values of the units on the Commission's LAT Form 5 (LAT 5), which utilizes a general property schedule to report depreciated replacement cost.[3] Subsequently, on January 20, 2007, FGT submitted revised returns to the Assessors and reported the value of the compressors on the Commission's LAT Form 12 (LAT 12), which utilizes tables to value oil and gas properties and applies a per horsepower value for compressors used in the oilfield. In submitting the revised returns, FGT indicated that the LAT 12s, as opposed to the LAT 5s, were more appropriate to determine the value of the compressors. FGT urged that the values using the general business tables under LAT 5 were highly inflated and not reflective of the compressors' true fair market value. The Assessors rejected the revised returns and used the values reported on the LAT 5 forms to value the compressors.[4]
After the tax rolls were closed for inspection, FGT gave notice of its protest of the assessed values. On May 10, 2007, FGT lodged an appeal with the East Baton Rouge Parish Board of Review. The following day, FGT lodged an appeal with the Washington Parish Board of Review. Additionally, after the appeals were filed, FGT hired Mark Andrews, an independent appraiser, to appraise the compressors.[5] In both appeals, FGT protested the assessed value of the compressors and presented information concerning the independent appraisals of Mr. Andrews. Both boards upheld the assessments.
Thereafter, FGT filed separate appeals from the boards' determinations with the Commission. The appeals were consolidated for hearing purposes. At the hearing, FGT presented the testimony of its fact witnesses and the expert testimony of Mr. Andrews regarding the fair market value of the compressors.[6] The Assessors contended that they utilized the values properly reported by FGT on the LAT 5 forms and that FGT had presented the Assessors with no evidence of obsolescence to warrant a change in the fair market value of the units. On September 10, 2008, the Commission reversed the Assessors' valuations of FGT's compressors, finding that the information FGT "provided regarding obsolescence is correct and ... there has been no reasonable basis for the Assessors' disregard for economic obsolescence." The Commission found that the Assessors' failure to consider evidence of obsolescence was arbitrary and an abuse of discretion. The Commission accepted Andrews' appraisal as being consistent with the standard appraisal methodology and ordered that the figures he arrived at for the compressors be entered on the tax rolls, reasoning that his "expert opinion is the only reliable evidence of the true fair market value of the gas compressor units. The Assessors did not refute his testimony or expert report at the hearing." Moreover, the Commission found that utilization of the tables associated with LAT 12 was the "proper cost approach tables to use in valuing FGT's compression assets."
The Washington Parish Assessor appealed the Commission's ruling to the Twenty-Second Judicial District Court for the Parish of Washington. The East Baton Rouge Parish Assessor filed an intervention in the Washington Parish Assessor's appeal. FGT excepted to the East Baton Rouge Parish Assessor's intervention in the Washington Parish suit on the basis of subject matter jurisdiction and venue, among others, but the district court overruled the exceptions. On the merits, the district court reversed the Commission's decision and reinstated the decision of the Washington Parish and East Baton Rouge Parish Boards of Review, thereby upholding the assessments of the Washington and East Baton Rouge Parish Assessors.
FGT has filed the instant appeal seeking review of the district court's ruling. FGT asserts that the district court lacked subject matter jurisdiction and was a court of improper venue such that it should not have considered the intervention filed on behalf of the East Baton Rouge Parish Assessor. FGT also contends that it was entitled to a reduction in the fair market value of its compressors located in East Baton Rouge and Washington Parishes due to obsolescence and that LAT 12 was the appropriate form to be utilized under the circumstances herein.[7]

LAW AND DISCUSSION

Appellate Jurisdiction of the 22nd Judicial District Court With Respect to the EBR Assessor
FGT urges that the Twenty-Second Judicial District Court for the Parish of Washington (22nd JDC) lacked subject matter jurisdiction to consider the East Baton Rouge Assessor's (EBR Assessor) appeal. FGT notes that "correctness of assessment" challenges fall within the district court's appellate jurisdiction rather than its original jurisdiction, and as such, the district courts are courts of limited jurisdiction, having only such appellate jurisdiction as constitutionally required or as is provided by law. See ANR Pipeline Co. v. Louisiana Tax Comm'n, XXXX-XXXX, pp. 5-6 (La. 7/2/03), 851 So.2d 1145, 1149; see also La. Const, art. V, § 16(B). FGT asserts that there is no constitutional or statutory provision vesting the 22nd JDC with subject matter jurisdiction over an appeal from a Commission determination of an assessment in East Baton Rouge Parish. Rather, FGT contends that La. R.S. 47:1998(A)(1)(a) applies herein and specifically limits the 22nd JDC's jurisdiction to the Washington Parish Assessor's appeal. The statute, in pertinent part, provides:
Any taxpayer or bona fide representative of an affected tax-recipient body in the state dissatisfied with the final determination of the Louisiana Tax Commission under the provisions of R.S. 47:1989 shall have the right to institute suit within thirty days of the entry of any final decision of the Louisiana Tax Commission in the district court for the parish where the Louisiana Tax Commission is domiciled or the district court of the parish where the property is located contesting the correctness of assessment [Emphasis added.]
Because East Baton Rouge Parish is both the Commission's domicile and the parish where the property assessed by the EBR Assessor is located, FGT concludes that the Nineteenth Judicial District Court for the Parish of East Baton Rouge (19th JDC) was the only court that had subject matter jurisdiction to consider the merits of the EBR Assessor's appeal.
FGT also asserts that even if the 22nd JDC had subject matter jurisdiction to consider the appeal and La. R.S. 47:1998(A)(1)(a) is strictly a venue provision, the 22nd JDC was a court of improper venue with respect to the EBR Assessor's appeal insofar as neither the Commission nor the property at issue is located in Washington Parish. As such, FGT concludes that the district court erred in denying its exception of improper venue.
In opposition, the EBR Assessor urges that FGT's reliance on La. R.S 47:1998(A)(1)(a) to support its assertion that the district court lacks subject matter jurisdiction is misplaced. Rather, the EBR Assessor contends that La. R.S. 47:1998(A)(1)(a) is exclusively a venue provision. The EBR Assessor notes that subject matter jurisdiction "is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted." La. Code Civ. P. art. 2. The EBR Assessor contends that the object of the action is judicial review of the consolidated Commission ruling. The EBR Assessor urges that La. R.S. 47:1998, along with La. R.S. 49:964(B) of the Administrative Procedure Act, expressly vest the district courts with subject matter jurisdiction to conduct a judicial review of Commission rulings. Additionally, the EBR Assessor cites La. Const. Art. VII, § 18(E), which provides:
Review. The correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law.
The EBR Assessor concludes that the cited authority provide the district courts with subject matter jurisdiction and La. R.S. 47:1998(A)(1)(a) addresses only the issue of venue for the appellate courts.
The EBR Assessor notes that La. Code Civ. P. art. 1034 provides that a defendant in an incidental action may not urge the exception of improper venue if the principal action has been instituted in the proper venue. The EBR Assessor also notes that this court has held that the exception of improper venue cannot be brought against an intervenor so long as venue is proper in the original suit brought by the plaintiff. Wooley v. AmCare Health Plans of Louisiana, Inc., 2005-2025 (La. App. 1 Cir. 10/25/06), 944 So.2d 668. In addressing this issue in Wooley, this court, citing Official Revision Comment (b)-1960 to La. Code of Civ. P. article 1034, noted:

If the principal action is filed in the proper venue, then that court has ancillary jurisdiction to entertain jurisdiction over the defendant in the incidental action, even though the venue might have been improper had the incidental action been instituted as a separate suit. This is axiomatic, otherwise the venue of all incidental actions would be improper if instituted against a nonresident defendant. [Emphasis in original.]
Id. at 677. The EBR Assessor avers that in the instant case it is clear that the Washington Parish Assessor filed the original appeal in a proper venue. As such, the EBR Assessor concludes that the 22nd JDC had ancillary jurisdiction over the incidental action of intervention, defeating FGT's venue and subject matter jurisdiction challenges.
Under a plain reading of La. R.S. 47:1998(A)(1)(a), we note that the district court for the parish where the Commission is domiciled or the district court of the parish where the property is located is the only district court that can consider appeals filed on behalf of a bona fide representative of an affected tax-recipient body. We also note that the EBR Assessor does not assert that venue is appropriate under any other codal article or statutory provision. Rather, La. R.S. 47:1998(A)(1)(a) is the exclusive venue provision applicable under the circumstances herein.[8] Since the venue provision contained in La. R.S. 47:1998(A)(1)(a) is mandatory, it is not superceded by La. Code of Civ. P. art. 1034. Wooley, 944 So.2d at 677, n.7. Because East Baton Rouge Parish is both the Commission's domicile and where the property at issue is located, the EBR Assessor was limited to seeking appellate review of the Commission's ruling in the 19th JDC.
Additionally, the 22nd JDC could not exercise ancillary jurisdiction in this instance. The Louisiana Supreme Court has indicated that it does "not necessarily embrace the doctrine of ancillary venue as a solution to all problems in multiparty litigation," but allowed ancillary venue when suits against two political subdivisions domiciled in different parishes arising from the same transaction or occurrence were required to be brought in each political subdivision's "home base." Underwood v. Lane Mem'l Hosp., 97-1997, p. 9 (La. 7/8/98), 714 So.2d 715, 719. By contrast, notwithstanding whether these two appeals arise out of the same transaction or occurrence, the 19th JDC, pursuant to La. R.S. 47.1998(A)(1)(a), was a court of proper venue to review the Commission's ruling at issue with regard to the compressors located in both Washington and East Baton Rouge Parishes. As such, because the 19th JDC was a proper venue for both appeals, there was no basis for the 22nd JDC to exercise ancillary venue.
The EBR Assessor asserts that the Commission's issuance of a single, consolidated order which impacts both Washington and East Baton Rouge Parishes clearly gives rise to a right of intervention under the plain language of La. Code Civ. P. art. 1091, as the appellate proceeding seeks judicial review and reversal of the "consolidated" ruling of the Commission.[9] We disagree. Consolidation of actions is a procedural convenience designed to avoid multiplicity of actions and does not cause a case to lose its status as a procedural entity. Dendy v. City Nat'l Bank, 2006-2436, p. 6 (La. App. 1 Cir. 10/17/07), 977 So.2d 8, 11. Procedural rights peculiar to one case are not rendered applicable to a companion case by the mere fact of consolidation; each case must stand on its own merits. Id. As such, the mere fact that the Commission consolidated the two cases does not relieve the EBR Assessor from seeking appellate review of the judgment as it relates to the property assessed in East Baton Rouge Parish in the 19th JDC. Thereafter, any of the parties could have sought to transfer the underlying appeal filed by the Washington Parish Assessor in the 22nd JDC to the 19th JDC.
Accordingly, we reverse the district court's judgment overruling FGT's declinatory exception raising the objection of improper venue, sustain the exception, and remand the matter to the district court with instruction to transfer the intervention filed on behalf of the EBR Assessor to the 19th JDC.[10] We also vacate the district court's judgment reversing the Commission's ruling with respect to the assessment of the property located in East Baton Rouge Parish.

Merits of the District Court Ruling with Respect to the Washington Parish Assessment

Standard of Review
Appeals from Commission decisions are governed by the Administrative Procedure Act. La. R.S. 49:967(A). Louisiana Revised Statute 49:964(F) confines judicial review to the record established before the agency and La. R.S. 49:964(G) establishes guidelines as to the standard for review, providing:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
Pursuant to paragraph (6), the district court is thus a fact finder that weighs the evidence and makes its own conclusions of fact by a preponderance of the evidence. St. Martinville, L.L.C. v. Louisiana Tax Comm'n, XXXX-XXXX, p. 4 (La. App. 1 Cir. 6/10/05), 917 So.2d 38, 41. Accordingly, this court must defer to the district court's factual determinations and use a manifest error standard of review where the Legislature empowered it with the function of fact finding, while giving due deference to the agency's credibility determinations. Id. at 41-42. Questions of law, such as the proper interpretation of a statute, are reviewed under the de novo standard of review. La. Mun. Ass'n v. State, XXXX-XXXX, p. 35 (La. 1/19/05), 893 So.2d 809, 836.

Legal Precepts
Louisiana Constitution Article VII, § 18(D) mandates that assessors are to "determine the fair market value of all property subject to taxation within his respective parish or district" and that "[f]air market value and use value of property shall be determined in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state." See also La. R.S. 47:2323. The guidelines for ascertaining fair market value of pipelines, as adopted by the Commission and contained within the Louisiana Administrative Code, are contained in La. Admin. Code 61:V:1301. At the pertinent time, Subsection (A)(2) of the referenced regulation provided:
Both classes of pipelines are to be assessed in the taxing district where located. A copy of LAT Form 14 is to be provided the pipeline owner. Surface equipment associated with pipelines (compressor stations, booster stations, etc.) are to be reported separately on LAT Form 5. Surface pipeline related equipment is to be valued individually at cost factored to current value less physical deterioration. Pipelines are to be valued for assessment purposes at cost less physical deterioration. A cost schedule is provided for the various sizes of "other pipelines" (See Tables 1307.A and B). Represented in these schedules is the cost-new, as of the appropriate assessment date, for the different size pipelines. This cost is to be reduced for the appropriate allowance for physical deterioration (See Table 1307.C), based on the age of the pipeline, by multiplying replacement cost by the appropriate percent good factor. Where significant functional and economic obsolescence has been proven to the assessor, appropriate allowance should be made on an individual basis. [Emphasis supplied.]
Moreover, at the pertinent time, La. Admin. Code 61:V:1305(F) provided:
Assessment will be based on fair market value (refer to column on LAT Form 14) unless taxpayer provides evidence that conditions exist that warrant change. Economic and/or functional obsolescence is a loss in value of personal property above and beyond physical deterioration. Upon a showing of evidence of such loss, substantiated by the taxpayer in writing, economic or functional obsolescence may be given. [Emphasis supplied.]

Argument
FGT contends that the district court erred in reversing the Commission's ruling insofar as it was entitled to a reduction due to obsolescence and the LAT 12 was the appropriate form to be utilized under the circumstances herein. FGT notes that the Washington Parish Assessor refused to accept the fair market values contained in FGT's revised rendition provided in LAT 12 because La. Admin. Code 61:V:1301 (A)(2) expressly provides that the LAT 5 should be utilized in determining the fair market value of compressor stations. FGT contends that 61:V:1301(A)(2), however, should be read in pari materia with the following provisions contained in La. Admin. Code 61:V:307(A):
The appropriate self-reporting Personal Property Report Form is to be forwarded each year, on or before February 15 in the year in which the property is to be appraised, to each person in whose name the property is assessed. Upon completion, the property owner shall return the form to the assessor by the first day of April of that year or 45 days after receipt, whichever is later.
***
8. LAT Form 12, Oil and Gas Property Form, should be sent to any company, business or individual having such property in the parish or taxing district. Refer to the oil and gas properties section (§903) for specific instructions on completion of this form.
***
10. LAT Form 14, Pipelines Form, should be furnished to all companies owning and/or operating pipelines other than pipelines which are assessed as public service properties by the Tax Commission. This form is to be a supplement to LAT Form 5 and LAT Form 12. Refer to the pipelines (§1301) for specific instructions on completion of this form.
FGT maintains that when read together, it is clear that LAT Form 14 (applying to pipeline companies), which is considered a supplement to LAT 5 and LAT 12 (also applying to oil and gas property), should be furnished to all companies owning and/or operating pipelines. As such, FGT opines that the Commission's regulations do contemplate the use of LAT 12, as well as the attendant Commission oil and gas tables, where applicable.[11] FGT concludes that the Commission's judgment finding the LAT 12 appropriate was consistent with such a reading.
FGT further contends that use of the LAT 12 to value compressor units was in accord with Commission practices. FGT notes that Joel Lopez, FGT's Director of Property Tax, testified that FGT contacted the Commission prior to preparing its revised renditions and Commission personnel provided it with the LAT 12. Mr. Andrews likewise testified that in his experience in helping pipeline clients in Louisiana he always utilized the LAT 12 schedule when valuing compressors. On the other hand, FGT asserts that the Assessor failed to present one scintilla of evidence of any other parish ever requiring the use of a LAT 5 or general business tables to value a pipeline's gas compressor unit. As such, FGT concludes that the Assessor should have accepted the values reported on LAT 12.
We note that the Commission is responsible for administering and enforcing all laws related to the state supervision of local property tax assessment. La. R.S. 47:1837(A). The Commission is also responsible for devising, prescribing, and requiring the use of all forms deemed necessary for the effective administration of the property tax laws. La. R.S. 47:1837(D)(1). The Commission is entitled to deference in its interpretation of its own rules and regulations. Bowers v. Firefighters' Ret. Sys., XXXX-XXXX, p. 4 (La. 3/17/09), 6 So.3d 173, 176. A reviewing court should afford considerable weight to the Commission's construction and interpretation of its rules and regulations adopted under a statutory scheme that it is entrusted to administer, and its construction and interpretation should control unless it is found to be arbitrary, capricious or manifestly contrary to its rules and regulations. Forbes v. Cockerham, XXXX-XXXX, p. 33 (La. 1/21/09), 5 So.3d 839, 859.
The Commission found that LAT 12, as opposed to LAT 5, was the appropriate form to be utilized under the circumstances herein. In reaching this determination, however, the Commission provided no explanation and hinged its decision on the basis that the Assessor abused his discretion in failing to recognize obsolescence. Reading Louisiana Administrative Code 61:V:1301(A)(2) and 61:V:307(A) in pari materia, we find that there is no reasonable interpretation that leads one to conclude that LAT 12 was the appropriate form to be utilized herein. Although the regulations may contemplate use of the LAT 12 as a supplement to LAT 14, La. Admin. Code 61:V:1301(A)(2) specifically requires that "surface equipment" including "compressor stations...be reported separately on LAT Form 5." There is no ambiguity in the clear directive of the regulation which requires compressor stations to be reported on LAT 5. Accordingly, we find that the Commission's conclusion that LAT 12 applied to the compressor units at issue is arbitrary, capricious and manifestly contrary to its rules and regulations.
FGT also contends that it was entitled to a reduction for obsolescence. FGT notes that the Assessor has a constitutional mandate to determine the fair market value of property within his parish and all property subject to taxation shall be valued at fair market value. La. Const. Art. VII, § 18(D). FGT also notes that the fair market value of real and personal property must be determined by following generally recognized appraisal procedures, one of which is the cost approach to valuation. See La. R.S. 47:2323(C). In utilizing the cost approach, the Assessor shall use a method in which the value of a property is derived by estimating the replacement or reproduction cost of the improvements, deducting therefrom the estimated depreciation. La. R.S. 47:2323(C)(2). FGT asserts that obsolescence is a component of depreciation and is a legitimate statutorily recognized and necessary step in the determination of fair market value. Because a fair market value determination is constitutionally mandated, FGT concludes that the Assessor must make a determination of whether obsolescence exists and to what extent.
FGT maintains that the Washington Parish Assessor herein failed to make that determination. Rather, FGT avers that the Assessor: 1) ignored the taxpayer's assertions that its property suffered from obsolescence; 2) failed to request any additional information or ask questions with regard to obsolescence; 3) failed to obtain an independent appraisal; and 4) failed to ask the Commission to have its staff provide an appraisal. FGT opines the Assessor blindly adhered to valuation tables in the face of information provided by Mr. Lopez that the values derived from the tables were grossly exaggerated and not in accord with what his experience indicated the fair market value should be. FGT asserts that nothing required it to provide the Assessor with evidence of obsolescence. FGT concludes that it is the Assessor's duty to determine fair market value, and if the Assessor ignores obsolescence, he does so at his own peril, subject to having the correctness of his assessment challenged by the taxpayer.
FGT also asserts that evidence regarding obsolescence was made known to the Assessors. FGT notes that Lopez testified that he informed the Assessor, prior to the close of the tax rolls, that the older compressors were no longer being manufactured, did not meet current air emission requirements, could not be resold without expensive upgrading, and were very expensive to operate and maintain. FGT contends that the Assessor simply chose to ignore that information and not consider whether to make an adjustment for obsolescence. FGT concludes that there is no basis in the record to support the district court's finding that the information regarding obsolescence was "not available" to the Assessor.
Additionally, FGT contends that it had no reason to obtain an appraisal until the Assessor failed to accept the reported values on LAT 12. FGT asserts that there is no constitutional provision or statute which imposes on it a duty to present a formal appraisal to the Assessor during the time that the tax rolls are open for inspection. FGT avers that because a taxpayer does not know with any certainty what value the Assessor is going to apply to its property until after the inspection of the rolls are closed or the Assessor advises that he has made a fair market value determination, the taxpayer cannot make an informed judgment regarding whether it is necessary to incur the substantial expense of obtaining an independent appraisal. FGT asserts that the rolls are open for inspection for taxpayers to review and taxpayers are not expected to be expert appraisers and should not be expected to provide appraisal reports during the inspection period. Additionally, FGT notes that the rolls are only open for inspection for fifteen (15) days, and the lists thereafter shall be certified to the Board of Review within three (3) days. La. R.S. 47:1992. FGT concludes that the Legislature would not have made the time period so short had it intended that the taxpayer gather all of his evidence to oppose the Assessor's determination of fair market value, including expert opinions and reports.
In opposition, the Assessor notes that the values that were entered on the tax rolls were taken directly from the original returns filed by FGT, which reported the value of the compressor units using LAT 5 forms. The Assessor also urges that he was not required to seek or request any additional information with regard to obsolescence. Rather, the Assessor asserts that the burden was on FGT to produce sufficient evidence of obsolescence to warrant a reduction in the value of the compressors reported on LAT 5. See La. Admin. Code 61:V:1301 (A)(2) and 61:V:1305(F). The Assessor argues that FGT's contention that the Assessor ignored FGT's assertions and information regarding obsolescence is refuted by the following testimony provided by Mr. Lopez:
Q: Okay. What information, documentation, evidence, anything tangible did you provide to either East Baton Rouge Parish or Washington Parish prior to filing appeals with the Board of Review?
***
A: I don't know that there was any information other than the LAT 12 and our phone conversations regarding our position that the LAT 12 was the correct value at that time because we did not have an independent appraisal that anything was required to be submitted to them, nor in law does it say it has to be submitted.
Q: Okay. I asked the original question. Is the answer nothing?
A: Nothing.
Based on the foregoing testimony, the Assessor concludes that FGT cannot meet its burden of showing that it provided him with sufficient evidence of economic obsolescence prior to the close of the tax rolls to warrant a reduction in the value FGT reported on the LAT 5.
This court has previously noted that it is "obvious...that the statutory framework places the burden on the party claiming a deduction for obsolescence to supply the assessor with sufficient data to support the claim." Dow Chem. Co. v. Pitre, 468 So.2d 747, 753 (La. App. 1 Cir.), writ denied, 474 So.2d 1308 (La. 1985). In Pitre, the taxpayer, Dow, had not provided the local assessor with any substantive evidence to support its claim of obsolescence. Although the conclusions in an independent appraisal had been provided to the local assessor, Dow failed to provide the assessor with any supporting data utilized to reach those conclusions. Id. at 753. As such, the local assessor denied a reduction for obsolescence. The Commission, however, overruled the local assessor's valuations and adopted values based upon the independent appraisal. The trial court reversed the Commission's ruling, and this court affirmed, reasoning as follows:
Under the facts of this case, we must conclude that the trial court was correct in holding that the Tax Commission erred in employing Dow's independent appraisal to modify the assessor's assessment. While it is true that the Tax Commission should receive all probative evidence to aid it in its function, that function is specifically designated by the constitution to be one of review, as opposed to assessment. [Internal citations omitted.]
Id. at 754. This court ultimately concluded that the Commission could not "usurp the constitutional authority of an assessor by utilizing factual data which was available to the taxpayer, yet withheld from the assessor." Id.[12]
In the instant case, FGT did not hire Mr. Andrews to appraise the compressor units until after the appeals were filed with the boards of review. While we agree with FGT's position that a taxpayer is not required to obtain and to present the Assessor an appraisal of its property prior to the close of the tax rolls, the taxpayer nonetheless must provide the Assessor with substantive evidence to support its claim for obsolescence. See La. Admin. Code 61:V:1301(A)(2) and La. Admin. Code 61:V:1305(F). Although Lopez indicated that he informed the Assessor that the compressors were outdated and expensive to operate, Lopez testified that those communications centered on whether LAT 5 or LAT 12 was the appropriate form to be utilized, and that nothing substantive had been provided to the Assessor with regard to obsolescence prior to the close of the tax rolls. Based upon our review of the record and in light of Mr. Lopez's testimony, we cannot conclude that the district court's ruling is manifestly erroneous to the extent it found that FGT did not provide the Assessor with sufficient data to warrant a reduction for obsolescence.

CONCLUSION
For the foregoing reasons, we reverse the district court judgment overruling the exception objecting to improper venue and render judgment sustaining the exception and remanding this matter to the district court with an order to transfer the intervention filed on behalf of the East Baton Rouge Parish Assessor to the Nineteenth Judicial District Court for the Parish of East Baton Rouge. We also vacate the district court's ruling to the extent it reversed the Commission's ruling with respect to the assessment of the compressor units located in East Baton Rouge Parish. Additionally, we affirm the district court's ruling with respect to the assessment of the compressor units located in Washington Parish.
REVERSED IN PART; VACATED IN PART; AFFIRMED IN PART; AND RENDERED WITH ORDER. REMANDED TO DISTRICT COURT.
NOTES
[1] XXXX-XXXX (La. App. 1 Cir. 9/7/05), 923 So.2d 81, writ denied, 2005-2372 (La. 3/17/06), 925 So.2d 547, certiorari denied, 549 U.S. 822, 127 S.Ct. 157, 166 L.Ed.2d 38 (2006).
[2] 2005-2604 (La. App. 1 Cir. 3/31/06)(Unpublished), 925 So.2d 777 (Table), writ denied, XXXX-XXXX (La. 9/1/06), 936 So.2d 204.
[3] FGT also submitted LAT 5 forms to the assessors for Acadia, Calcasieu, and St. Landry Parishes.
[4] The revised forms were also sent to the assessors for Acadia, Calcasieu, and St. Landry Parishes, who accepted the revised renditions as reported on the LAT 12 forms.
[5] FGT notes that Mr. Andrews is an experienced appraiser, having nearly 30 years of experience in the area and has been involved in similar suits concerning oil and gas property valuation in twelve states, along with Canadian province of Alberta.
[6] The Assessors did not present any witnesses.
[7] Specifically, FGT raises the following as assignments of error:

1. The District Court erred in denying Taxpayer's Declinatory Exception of Lack of Subject Matter Jurisdiction where the EBR Assessor appealed a determination of the [Commission] regarding the assessment of property in East Baton Rouge Parish to the District Court in Washington Parish.
2. The District Court erred in denying Taxpayer's Declinatory Exception of Improper Venue where the East Baton Rouge Assessor appealed a determination of the [Commission] regarding the assessment of property in East Baton Rouge Parish to the District Court in Washington Parish.
3. The District Court erred in denying Taxpayer's Peremptory Exception of No Cause of Action or Alternative Declinatory Exception of Improper Use of Intervention where the EBR Assessor used the intervention procedure to appeal a determination of the [Commission] regarding the assessment of property in East Baton Rouge Parish to the District Court in Washington Parish.
4. The District Court erred regarding the appropriate standard of review the [Commission] should have applied to Taxpayer's protest of the EBR and Washington Assessors' assessments.
5. The District Court erred regarding the proper [Commission] Table to use in determining fair market value of Taxpayer's gas compressor units.
6. The District Court erred in denying the admissibility of Taxpayer's Independent Expert Appraisal Report.
7. The District Court erred in finding that the statutory scheme, which grants the [Commission] authority to "correct" assessments limited the LTC's right to review evidence presented during the [Commission] hearing.
8. The District Court erred in finding that evidence of obsolescence had not been presented to the Washington and EBR Assessors timely.
[8] Even if the appellate review procedure afforded under La. R.S. 49:964(B) of the Administrative Procedure Act applied herein, the 19th Judicial District Court for the Parish of East Baton Rouge would be the only district court in which the EBR Assessor could seek review.
[9] Louisiana Code of Civil Procedure art. 1091 provides, in pertinent part:

A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto...
[10] Because we resolve this issue on the declinatory exception raising the objection of improper venue, we need not address the issue of subject matter jurisdiction or peremptory exception raising the objection of no cause of action.
[11] Moreover, FGT urges that the Commission's oil and gas tables are the only tables that specifically address cost new values for oil and gas compressor units.
[12] Similarly, in Crosstex LIG, LLC v. Bailey, XXXX-XXXX (La. App. 1 Cir. 9/15/06)(Unpublished), 936 So.2d 886 (Table), writ denied 2006-2475 (La. 12/15/06), 945 So.2d 691, this court, in an unpublished opinion, found that a taxpayer did not provide an assessor with any substantive evidence prior to the close of the tax rolls to support its demand for obsolescence. Therein, the taxpayer had provided the assessor an ad valorem report, which contained a utility conversion chart table. Although the chart reflected a deduction for economic obsolescence, it did not include detailed figures to support the calculations. As such, this court concluded that the assessor did not abuse his discretion in denying obsolescence and the Commission did not err in affirming the assessment.